**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A2537. PATTERSON v. LONG.

A12A2538. LONG v. PATTERSON.

BARNES, Presiding Judge.

These companion appeals arise out of the arbitration of a products liability case in which the arbitrator found that the buyer of a defective three-wheeled motor trike sustained $750,000 in damages resulting from a rollover accident, but was entitled to recover only 25 percent of those damages because of her own conduct. The superior court declined to modify the arbitration award and instead vacated it, concluding that the arbitrator had manifestly disregarded the law of strict liability by reducing the buyer's damages based on contributory and comparative negligence principles. As discussed below, we affirm the superior court's denial of the buyer's request to modify the arbitration award. However, we conclude that the buyer failed

to show that the arbitrator appreciated the existence of a clearly controlling legal principle and deliberately chose to ignore it, and thus failed to establish that the arbitrator manifestly disregarded the law. Accordingly, we reverse the superior court's decision to vacate the arbitration award and remand with instruction that the court confirm the award.

The record reflects that Theresa Irene Long was driving a three-wheeled motor trike when it rolled over as she attempted to negotiate a curve, trapping her under the trike and resulting in severe injuries. The vehicle had been manufactured as a motorcycle but later had been customized and converted into a trike by Joe Patterson f/k/a J Dog Kustomz, LLC a/k/a JDK Body Shop ("Patterson"), who sold the trike to a customer named Holly Fowler, who later sold it to Long. After Long commenced a products liability action against Patterson for damages arising out of the accident, the parties agreed to arbitrate the case. Pursuant to the parties' arbitration agreement, the arbitration was bifurcated into two separate hearings related to liability and damages. The parties chose not to have the hearings transcribed.

After hearing evidence on only the liability portion of the case, the arbitrator entered an order containing several pages of findings regarding the defective condition of the trike resulting from Patterson's customization work, Long's role in

causing the rollover accident, and the relative degrees of responsibility of Patterson and Long for the accident (the "first arbitration order"). However, at no point in the order did the arbitrator use the words "strict liability" or "negligence," cite to any case law or statutes, or otherwise lay out the governing law he chose to apply.

More specifically, in the first arbitration order, the arbitrator found that Patterson's "work in converting this motorcycle into a trike was of such magnitude that he became manufacturer of goods sold as new to Ms. Long's predecessor, Ms. Fowler" (the "first arbitration order"). The arbitrator further found "that the trike, as converted[,] was defective in that its ability to withstand lateral acceleration forces made it more susceptible to rollover than comparable trikes," and that the defect in the trike "in part caused this accident." With respect to Long, the arbitrator found that "operator error contributed to cause this rollover" in that she was "turning too fast" around the curve as the result of "either intoxication or inexperience or both." Based on these findings, the arbitrator concluded that the parties were "both responsible to different degrees," but that Long's conduct "was in large part the cause of this accident." In the final section of the order, the arbitrator found that the defect in the trike caused by Patterson was "25% the proximate cause of this rollover," while "operator error" by Long was "75% the cause of this accident."

3

The arbitrator subsequently conducted a hearing on damages. After receiving evidence regarding the injuries sustained by Long, the arbitrator entered an order finding that as a result of the rollover accident, Long had "received permanent injuries, including but not limited to a right arm femur fracture, left wrist and hand fracture, right hand fractures, head injury, low back injury and serious abrasions" (the "second arbitration order"). The arbitrator concluded that "the full value of her injury [was] $750,000." However, the arbitrator reduced Long's damages by 75 percent to $187,500 because she was "a major contributing proximate cause of the accident" and awarded her only that reduced amount.

Long filed a motion to modify and confirm the second arbitration order in the superior court. She contended that the arbitrator's action in reducing the full damages award by 75 percent was both "imperfect in a manner of form" and a miscalculation of figures, requiring modification of the award under OCGA § 9-9-14 (b) to reflect that the judgment awarded in this matter was $750,000.[1] Long further contended that the arbitrator had manifestly disregarded the law of strict liability by not awarding her

_____

[1] Because of a "High/Low Agreement" reached by the parties before the arbitration, Long would have been entitled to recover only $500,000 if the full $750,000 in damages had been awarded.

4

the full $750,000 in damages and that modification of the second arbitration award was appropriate on that ground as well.

After hearing oral argument, the superior court entered an order declining to modify the second arbitration award under OCGA § 9-9-14 (b) for being imperfect in the manner of form or containing a miscalculation of figures. While the superior court agreed with Long that the arbitrator had manifestly disregarded the law of strict liability by reducing the full damages award, the court concluded that the proper remedy was to vacate, rather than modify, the second arbitration order on that ground. In vacating the second arbitration order, the superior court concluded that the arbitrator in his first arbitration order had found Patterson strictly liable for the injuries sustained by Long, and had manifestly disregarded the law of strict liability by then applying contributory and comparative negligence principles to reduce the full amount of Long's damages in his second arbitration order. Consequently, the superior court chose to vacate the second arbitration order and remand the case to the arbitrator with instruction to reconsider its damages award without applying contributory and comparative negligence principles.

1. Patterson contends that the superior court erred in vacating the second arbitration order because there was an insufficient basis for the court to conclude that the arbitrator had manifestly disregarded the law of strict liability. According to Patterson, there was insufficient evidence in the scant existing record to show that the law of strict liability rather than negligence clearly applied in this case, or that the arbitrator appreciated the existence of a clearly controlling legal principle and deliberately chose to ignore it.

"The power of a court to vacate an arbitration award has been *severely* limited in order not to frustrate the legislative purpose of avoiding litigation by resort to arbitration." (Citation and punctuation omitted; emphasis in original.) *Hansen & Hansen Enterprises, Inc. v. SCSJ Enterprises, Inc.*, 299 Ga. App. 469, 470 (682 SE2d 652) (2009). Hence, the Georgia Arbitration Code, OCGA § 9-9-1 et seq., "demands that courts give extraordinary deference to the arbitration process and awards so that the trial court cannot alter the award." *Scana Energy Marketing, Inc. v. Cobb Energy Mgmt. Corp.*, 259 Ga. App. 216, 221 (2) (576 SE2d 548) (2002). To ensure that proper deference is shown toward the arbitration process, the Arbitration Code requires a trial court to confirm an arbitration award unless one of the specific

statutory grounds for vacating or modifying the award has been established. See

OCGA § 9-9-12; *Greene v. Hundley*, 266 Ga. 592, 594-595 (1) (468 SE2d 350)

(1996).

The statutory grounds for vacating an arbitration award are found in OCGA §

9-9-13 (b). Under subsection (b) (5) of that statute, the trial court is authorized to

vacate an arbitration award if the rights of a party were prejudiced by "[t]he

arbitrator's manifest disregard of the law." OCGA § 9-9-13 (b) (5).

> The two-prong test for ascertaining whether an arbitrator has manifestly
> disregarded the law has both an objective and a subjective component.
> We first consider whether the governing law alleged to have been
> ignored by the arbitrator was well defined, explicit, and clearly
> applicable. We then look to the knowledge actually possessed by the
> arbitrator. The arbitrator must appreciate the existence of a clearly
> governing legal principle but decide to ignore or pay no attention to it.
> Both of these prongs must be met before a court may find that there has
> been a manifest disregard of law. An error in interpreting the applicable
> law does not constitute manifest disregard. The applicable law must
> have been deliberately ignored.

(Citations and punctuation omitted.) *Hansen & Hansen Enterprises, Inc.*, 299 Ga.

App. at 471 (1). See *ABCO Builders, Inc. v. Progressive Plumbing, Inc.*, 282 Ga. 308,

309 (647 SE2d 574) (2007). The burden of showing that both prongs of the test for

7

manifest disregard of the law have been satisfied is on the party seeking to vacate the arbitration award. See *Bennett v. Builders II, Inc.*, 237 Ga. App. 756, 757 (3) (516 SE2d 808) (1999) ("[T]he burden of proof is on the one seeking to set aside the award."). "[T]his showing is an extremely difficult one to make, especially in light of the fact that an arbitrator is not required to make findings of fact or state his or her rationale in reaching decisions." *ABCO Builders, Inc.*, 282 Ga. at 309.

(a) *Objective Prong.* With respect to the objective prong of the manifest disregard test, it is undisputed among the parties that the law of products liability is "well defined" and "explicit." In Georgia, recovery in products liability actions can be grounded on either strict liability or negligence. See *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 334-335 (2), n. 1 (319 SE2d 470) (1984). Both parties agree that if liability is imposed upon a defendant manufacturer under the doctrine of strict liability, principles of contributory and comparative negligence are inapplicable, and fault should not be apportioned between the plaintiff victim and the defendant manufacturer in awarding damages. See *Deer & Co. v. Brooks*, 250 Ga. 517, 518 (1) (299 SE2d 704) (1983) (concluding that "contributory negligence is not a defense to a claim of strict liability for product-caused harm") (citation and punctuation omitted); *Ford Motor Co. v. Carter*, 239 Ga. 657, 662 (238 SE2d 361)

8

(1977) (when a manufacturer is found strictly liable for a product defect, "[t]he usual defenses pertaining to negligence of a defendant may not be invoked"). See also Charles R. Adams III, Ga. Law of Torts § 25:10 (c) (2012-2013 ed.).

Both parties also agree that if a defendant manufacturer is found liable under the traditional theory of negligence, principles of contributory and comparative negligence do apply. See, e.g., *Ray v. Ford Motor Co.*, 237 Ga. App. 316, 319-320 (2) (514 SE2d 227) (1999) (jury charge on contributory and comparative negligence appropriate with regard to plaintiff's products liability claim sounding in negligence). Under the doctrine of comparative negligence,

> where the negligence of the plaintiff joins with the negligence of the defendant in proximately causing the plaintiff's injuries, the plaintiff will be precluded from recovering against the defendant, if the negligence of the plaintiff is equal to or greater than that of the defendant, or, if the negligence of the plaintiff is less than that of the defendant, the plaintiff's recovery of damages will be reduced in proportion to his or her negligence.

(Emphasis omitted.) *Weston v. Dun Transp.*, 304 Ga. App. 84, 87 (1) (695 SE2d 279) (2010). See OCGA § 51-12-33 (a), (g).

In contrast, the parties disagree as to whether the law of strict liability is "clearly applicable" in this case. Long argues that the arbitrator in his first arbitration

9

order found Patterson strictly liable for the injuries sustained by Long, and that, as a result, the law of strict liability was clearly applicable and should have been relied upon by the arbitrator in awarding damages in the second arbitration order. Patterson responds that it is unclear from the face of the first arbitration order – which contained language tracking Georgia's strict liability statute[2] but also appeared to apply negligence principals by apportioning responsibility for the rollover accident between Long and Patterson – whether the arbitrator had intended to apply the law of strict liability or negligence in deciding the matter before it.

We need not resolve whether the law of strict liability is clearly applicable. Even if the law of strict liability clearly applied in this case (which is questionable), Long has failed to carry her difficult burden of establishing that the subjective prong of the test for manifest disregard has been met.

---

[2] OCGA § 51-1-11 (b) (1), Georgia's strict liability statute, provides: The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

(b) *Subjective Prong.* As our Supreme Court explained in *ABCO Builders, Inc.*, 282 Ga. at 309-310, to prove the subjective prong of the manifest disregard test,

> clear evidence of the arbitrator's intent to purposefully disregard the law is required. . . . [T]here must be concrete evidence of this intent either in the findings of the arbitrator, if he or she chooses to make such findings, or in the transcript of the arbitration hearing, if the parties choose to have the hearing transcribed.

Here, as previously noted, the arbitration hearings were not transcribed, and we therefore must look to the face of the arbitration orders, neither of which discuss the governing law, to determine whether the arbitrator purposefully disregard the law of strict liability by apportioning damages between Long and Patterson. See id.

Turning to the arbitration orders issued by the arbitrator, we note at the outset that the second arbitration order apportioning damages based on contributory and comparative negligence principles certainly may evidence an error by the arbitrator in interpreting the law of strict liability.[3] But an arbitrator who "incorrectly interprets the law has not manifestly disregarded it. To manifestly disregard the law, one must

---

[3] On the other hand, the second arbitration order, by awarding any damages at all, could be construed as erroneously interpreting the law of negligence, in light of the arbitrator's finding, contained in both the first and second arbitration orders, that Long's responsibility for the accident was greater than 50 percent.

be conscious of the law and deliberately ignore it." (Citation and punctuation omitted.) *ABCO Builders, Inc.*, 282 Ga. at 309. And there is nothing in the second arbitration order, read alone or in conjunction with the first arbitration order, reflecting that the arbitrator appreciated that apportionment of damages was improper if strict liability applied "but decide[d] to ignore or pay no attention to [that principle]." (Citation omitted.) *Hansen & Hansen Enterprises*, 299 Ga. App. at 471 (1). Hence, given the absence of the relevant transcripts to shed light on the orders issued by the arbitrator, Long has failed to meet the standard of proof necessary for showing manifest disregard of the law. See *Dan J. Sheehan Co. v. McCrory Constr. Co.*, 284 Ga. App. 159, 163 (2) (643 SE2d 546) (2007) ("The absence of a transcript . . . precludes [the petitioner seeking to vacate the arbitration award] from fulfilling its burden of showing by the record that the arbitrator manifestly disregarded the law.") (citation and punctuation omitted); *McGill Homes, Inc. v. Weaver*, 278 Ga. App. 622, 624 (629 SE2d 535) (2006) (same). Compare *Montes v. Shearson Lehman Bros., Inc.*, 128 F3d 1456, 1461 (11th Cir. 1997) (manifest disregard shown where arbitrator's award expressly recited the winning party's argument that the controlling law should be ignored).

12

Long, however, argues that certain email correspondence between the arbitrator and the parties' counsel, which occurred after issuance of the first arbitration order but before issuance of the second arbitration order, reflect that the arbitrator manifestly disregarded the law. Patterson responds that the email exchange, particularly the arbitrator's final email, was "unclear at best" and could not support a finding that the arbitrator manifestly disregarded the law of strict liability.[4] We agree with Patterson.

_____

[4] Patterson also responds that the emails are inadmissible hearsay. We disagree. "When the relevance of an out-of-court statement is in the effect it had on one who heard or read it, the out-of-court statement is not hearsay." Paul S. Milich, Ga. Rules of Evidence § 17:5 (2011-2012 ed.). Based on this principle, statements introduced to prove their effect on the hearer are admissible as non-hearsay. Id. See *Allen v. State*, 275 Ga. 64, 69 (4) (561 SE2d 397) (2002); *Fletcher v. Fletcher,* 242 Ga. 158, 161 (5) (249 SE2d 530) (1978); *Coastal Health Svcs. v. Rozier*, 176 Ga. App. 240, 240-241 (1) (335 SE2d 712) (1985). Thus, the emails to the arbitrator from the parties' counsel were admissible to show their effect on the arbitrator rather than to prove the truth of the matters asserted in them. See id. In turn, the emails from the arbitrator to the parties' counsel were admissible to show the arbitrator's intent or mental state rather than to prove the truth of the matters asserted in them. See *Edgeworth v. Edgeworth*, 239 Ga. 811, 812 (239 SE2d 16) (1977); *Stevens v. Way*, 167 Ga. App. 688, 689 (1) (307 SE2d 507) (1983); *Thompson v. Thompson*, 153 Ga. App. 80, 81-82 (3) (264 SE2d 558) (1980). See also Ga. Rules of Evidence, supra, § 17:12. Our conclusions in this regard are based on the law of evidence as it existed before enactment of the new Georgia Evidence Code. See Ga. Laws 2011, Act 52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.").

As already noted, in the first arbitration order, the arbitrator found that Patterson was a "manufacturer" of the trike "sold as new" because of his extensive customization work; that the trike was defective; that "operator error" by Long because of intoxication and/or inexperience was "in large part" the cause of the rollover accident; and that Patterson was 25 percent of the proximate cause of the accident and Long the remaining 75 percent. The arbitrator emailed the first arbitration order to the parties' counsel. In the email, the arbitrator noted, "This is how I feel the case should come out. I have some concern that [the] form of the order may be impermissible, but I do not have any case law which prohibits this result. I will be willing to reconsider, if anyone can provide case law which indicates this result is not allowed by law."

Long's counsel responded to the arbitrator's email, asserting that the arbitrator had found Patterson liable under a strict liability theory of recovery, and that, as a result, contributory negligence principles did not apply and "under such circumstances there is no apportionment of the proximate causation, or, if there is, it is not material." Patterson's counsel then responded by email, asserting that the arbitrator had been clear that Long "was 75% at fault in causing the accident and there [had been] no determination of strict liability," and that he "agreed" that Long

14

would be entitled to 25% of any damages ultimately awarded. In a follow-up email sent to Patterson's counsel and the arbitrator, Long's counsel reiterated his belief that there had been a finding of strict liability, but he also responded to Patterson's counsel, "I think you and I are on the same page that what [the arbitrator] is trying to do in his order is apportion the proximate cause for the accident." Notably, Long's counsel further stated, "there doesn't appear to be any legal prohibition against [the arbitrator] apportioning the proximate cause for this accident."

After receiving the last email from Long's counsel, the arbitrator responded, "The arguments you made to each other are exactly why I had some concern about the 'form' of the order, but you have arrived where I hoped you would end up. I want Ms. Long to receive 25% of a full award." The arbitrator went on to state that if the parties could not arrive at that result through negotiation, they needed to choose a time for him to conduct a hearing on damages.

According to Long, these emails, culminating in the final email response from the arbitrator, demonstrate that the arbitrator knew that strict liability applied and thus that damages awarded could not be apportioned based on principles of contributory and comparative negligence, but nevertheless chose to ignore that law and grant Long only 25 percent of her full damages. In our view, however, the string of emails relied

15

upon by Long are ambiguous at best and are more confusing than revealing. If anything, the statement by Long's counsel in his final email to the arbitrator that "there doesn't appear to be any legal prohibition against [the arbitrator] apportioning the proximate cause for this accident" could have led the arbitrator to believe that both parties ultimately agreed that it was within his authority to apportion responsibility for the accident between the parties in his final arbitration award. The emails relied upon by Long are simply not the type of clear-cut evidence required to show manifest disregard of the law by an arbitrator. Compare *Montes*, 128 F3d at 1641.

Lastly, in an effort to prove manifest disregard of the law in lieu of a transcript, Long relies upon an affidavit of his counsel attesting to the legal arguments that were made before the arbitrator in the hearing on damages. But OCGA § 9-9-8 (e) provides: "The arbitrators shall maintain a record of all pleadings, documents, testimony, and other matters introduced at the hearing. The arbitrators or any party to the proceeding may have the proceedings transcribed by a court reporter." Allowing a party or his or her counsel to submit an affidavit describing what allegedly occurred at an arbitration hearing would allow an end-run around the specific methods for preserving the record enunciated in OCGA § 9-9-8 (e).

16

Accordingly, we conclude that the affidavit submitted by Long's counsel was inadmissible and could not be relied upon by Long to establish what was argued at the hearing on damages. Cf. OCGA § 5-6-41 (f) (describing acceptable methods for correcting trial court record that is incomplete; affidavit from a party not included among the accepted methods); *Daniel v. State*, 170 Ga. App. 795, 795-796 (3) (318 SE2d 218) (1984) (affidavit of appellant's counsel regarding what occurred during trial did not serve as substitute for transcript and was inadmissible). See also *Dolton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 935 A2d 295, 298-300 (D.C. 2007) (counsel's affidavit describing evidence submitted by the parties during arbitration hearing was not permissible substitute for transcript).

For these reasons, Long failed to show that the arbitrator manifestly disregarded the law of strict liability in his award of damages in the second arbitration order. Admittedly, the second arbitration order was confusing and appeared inconsistent with both the law of strict liability and negligence. But, under the precedent of our Supreme Court and this Court, that type of error in interpreting the law, standing alone, is not enough to establish manifest disregard by the arbitrator. There simply is no competent evidence in the record to show that the arbitrator appreciated the existence of clearly governing legal principles and intentionally chose

to ignore them in awarding damages. The superior court therefore erred in vacating the second arbitration order and remanding the case to the arbitrator for further proceedings.[5]

*Case No. A12A2538*

2. Long appeals the superior court's decision to vacate the second arbitration order, contending that the superior court erred by vacating rather than modifying the order. According to Long, the arbitrator should have modified the second arbitration order because the arbitrator's actions constituted a "miscalculation of figures" as contemplated by OCGA § 9-9-14 (b) (1), and because the arbitrator's issuance of the damages award was "imperfect in a manner of form, not affecting the merits of the controversy" as contemplated by OCGA § 9-9-14 (b) (3).[6]

---

[5] In light of our decision that the superior court erred in vacating the second arbitration order, we need not address Patterson's remaining enumerations of error.

[6] Long further contends that the superior court should have modified the second arbitration order because the arbitrator "awarded on a matter not submitted" to it for consideration as contemplated by OCGA § 9-9-14 (b) (2). But Long never argued before the superior court that modification was appropriate on this statutory ground. "It is axiomatic that we will not resolve issues that were not raised and ruled upon by the trial court." *Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 314 Ga. App. 360, 372 (5), n. 9 (724 SE2d 53) (2012). See *Ralston v. City of Dahlonega*, 236 Ga. App. 386, 388 (3) (512 SE2d 300) (1999) (refusing to consider party's argument that trial

18

While a trial court can modify an arbitration award on the grounds set forth in OCGA § 9-9-14 (b), "a modification cannot be substantive such that it would affect the merits of the case." *Tanaka v. Pecqueur*, 268 Ga. App. 380, 383 (3) (601 SE2d 830) (2004). See *Kent v. Mitchell*, __ Ga. App. __ (735 SE2d 110) (2012); *Thacker Constr. Co. v. A Betterway Rent-A-Car*, 186 Ga. App. 660, 663 (368 SE2d 178) (1988). Here, Long asserted that the arbitrator misapplied the law of strict liability as it relates to damages and requested that the superior court modify the second arbitration order to increase the damages to $750,000. But increasing the amount of damages awarded to the plaintiff because of an alleged mistake of law made by the arbitrator clearly would constitute a substantive change to the award, not a mere change in form. See *Tanaka*, 268 Ga. App. at 383 (3) (argument that arbitration award should be modified because the damages awarded by arbitrator were too low was a matter of substance affecting merits of the case); *Ralston*, 236 Ga. App. at 387-388 (3) (argument that arbitrator's award of damages should be increased to $1 million due to "palpable mistake of law" committed by arbitrator was not proper basis for

court erred in failing to vacate arbitration award, since party had requested only modification of the award in the trial court). Consequently, Long waived her argument for modification predicated on OCGA § 9-9-14 (b) (2). By extension, her reliance on *Sweatt v. Intl. Dev. Corp.*, 242 Ga. App. 753, 757-758 (2) (531 SE2d 192) (2000), which applied that statutory provision, is misplaced.

modification of the award). Cf. *Gill Plumbing Co. v. Jimenez*, 310 Ga. App. 863, 868 (1) (714 SE2d 342) (2011) (discussing cases and holding, in context of discussion of trial court's ability to modify or mold verdict entered by a jury, that "an increase in the amount of damages awarded . . . clearly is a matter of substance, not mere form").[7] The superior court thus committed no error in denying Long's request to modify the second arbitration order.

*Judgment affirmed in Case No. A12A2538. Judgment reversed in Case No. A12A2537, and case remanded with instruction. McFadden and McMillian, JJ., concur.*

---

[7] Long relies upon *West v. Jamison*, 182 Ga. App. 565, 567-568 (356 SE2d 659) (1987) in an effort to support her argument for modification, but that case addressed whether it was proper to vacate the arbitration award at issue under the statutory predecessor to OCGA § 9-9-13 (b) (3). Indeed, we expressly noted that "neither party to this appeal seriously is contending the arbitrator made clerical errors such as those contemplated [by the statutory predecessor to OCGA § 9-9-14] and which may be corrected by modification prior to confirmation." Id.