310 Ga. 159
FINAL COPY

S19G1478. JOHNS et al. v. SUZUKI MOTOR OF AMERICA, INC. et al.

NAHMIAS, Presiding Justice.

We granted this petition for certiorari to decide whether OCGA § 51-12-33 (a) applies to a strict products liability claim under OCGA § 51-1-11. The Court of Appeals held that strict products liability claims are subject to such apportionment. See *Suzuki Motor of America v. Johns*, 351 Ga. App. 186, 198 (830 SE2d 549) (2019). For the reasons discussed below, we agree, so we affirm.

1. The facts of this case are detailed throughout the Court of Appeals opinion, and we will merely summarize them as pertinent here. Adrian Johns was seriously injured in August 2013 when the front brake on his Suzuki motorcycle failed suddenly. He sued the designer and manufacturer of the motorcycle, Suzuki Motor Corporation ("SMC"), and its wholly-owned subsidiary and American distributor, Suzuki Motor of America, Inc. ("SMAI") (collectively, "Suzuki"), asserting a claim of strict products liability

based on a design defect and two negligence claims (breach of a continuing duty to warn and negligent recall). Adrian's wife, Gwen Johns, also sued Suzuki, alleging loss of consortium.

The case proceeded to trial, where the Johnses presented evidence showing that the brake failure of Adrian's motorcycle was caused by a defect in the design of the front master brake cylinder that created a corrosive condition, which resulted in a "leak path" that misdirected the flow of brake fluid and caused the total brake failure. About two months after Adrian's accident, Suzuki issued a recall notice warning about a safety defect in the front brake master cylinder. Suzuki had notice of the issue, including reports of similar accidents, for a significant amount of time before Adrian's accident. Adrian admitted, however, that contrary to the instructions in the owner's manual to replace the brake fluid every two years, he had not changed the fluid during the eight years he had owned the motorcycle.

The jury found in favor of the Johnses on all claims. It awarded $10.5 million in compensatory damages to Adrian and another $2

million to Gwen. The jury apportioned 49% of the fault to Adrian and 51% to the two defendants — 45% to SMC and 6% to SMAI. In light of these findings, the trial court reduced Adrian's award to $5,355,000 and Gwen's award to $1,020,000. Because the damages after apportionment were less than the Johnses' pretrial demand of $10 million, the trial court rejected the Johnses' request for pre-judgment interest under OCGA § 51-12-14 (a).

The Johnses cross-appealed,[1] arguing that because their claim was based on strict products liability, the trial court erred in reducing the damages awards based on OCGA § 51-12-33 (a), and therefore also erred in failing to award them pre-judgment interest. The Court of Appeals affirmed the trial court's rulings. See *Suzuki Motor*, 351 Ga. App. at 198-199 & n.5. As explained below, the Court of Appeals did so correctly.[2]

---

[1] Suzuki appealed, but the Court of Appeals rejected its numerous claims. See *Suzuki Motor*, 351 Ga. App. at 189-197. We denied Suzuki's petition for a writ of certiorari, and we do not address that portion of the Court of Appeals decision.

[2] Although Adrian litigated three claims against Suzuki, two of which sounded in negligence, there was a single blank on the verdict form for the jury

2. The current version of OCGA § 51-12-33 was enacted in 2005. See Ga. L. 2005, p. 1, § 12. As particularly relevant to the issue presented in this case, subsection (a) of § 51-12-33 says:

> Where an action is brought against one or more persons for injury to person or property and the plaintiff is to some degree responsible for the injury or damages claimed, the trier of fact, in its determination of the total

---

to fill in with the "compensatory damages" for Adrian. The Johnses argue that we should treat the full award as damages for the strict products liability claim and therefore hold that none of it is subject to a reduction based on OCGA § 51-12-33 (a) (which indisputably applies to negligence claims). Suzuki, on the other hand, argues that the Johnses should have required the jury to separate the award in order to preserve their argument based on strict products liability. Because we conclude that § 51-12-33 (a) applies even to the strict products liability claim, we need not decide whether the Johnses should have requested a differentiated damages award. Nor do we need to address Suzuki's other arguments that the Johnses' claim about § 51-12-33 (a) was not properly raised or preserved.

The Johnses also argue that the separate damages award for Gwen's loss of consortium was not subject to § 51-12-33 (a) because the loss of consortium claim is derivative of and arises out of the strict products liability tort committed against Adrian. See *Henderson v. Hercules, Inc.*, 253 Ga. 685, 686 (324 SE2d 453) (1985). The Johnses have not made any independent argument about the applicability of § 51-12-33 (a) to the loss of consortium claim, so we will not treat that claim separately. See *Suzuki Motor*, 351 Ga. App. at 198 ("[B]ecause Gwen Johns's loss of consortium claim was derivative of and arises out of the tort committed against [Adrian] Johns, her award must also be reduced."). See also *Zaldivar v. Prickett*, 297 Ga. 589, 589 n.1 (774 SE2d 688) (2015) (not distinguishing between the main tort claim and the loss of consortium claim); *Barnett v. Farmer*, 308 Ga. App. 358, 362 (707 SE2d 570) (2011) (physical precedent only) (holding that OCGA § 51-12-33 required the jury to apportion the wife's award for loss of consortium based on the fault of her husband and the tortfeasor, and rejecting the argument that such apportionment violates the interspousal immunity doctrine).

amount of damages to be awarded, if any, shall determine the percentage of fault of the plaintiff and the judge shall reduce the amount of damages otherwise awarded to the plaintiff in proportion to his or her percentage of fault.

Subsection (g) says:

Notwithstanding the provisions of this Code section or any other provisions of law which might be construed to the contrary, the plaintiff shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed.

We have said that these two subsections together "codify the doctrine of comparative negligence." *Zaldivar v. Prickett*, 297 Ga. 589, 594 (774 SE2d 688) (2015).[3]

As the Court of Appeals recognized, "by its plain terms, the statute governs actions 'for injury to person,' without in any way distinguishing between the theories upon which those claims are premised." *Suzuki Motor*, 351 Ga. App. at 198. The Johnses' strict products liability claim is "an action . . . brought against one or more persons [SMC and SMAI] for injury to person [Adrian]." OCGA § 51-12-33 (a). Thus, the strict products liability claim falls comfortably

---

[3] We further discuss the meaning of this statement in Division 4 (a) below.

within the statute's textual ambit. See *Fed. Deposit Ins. Corp. v. Loudermilk*, 305 Ga. 558, 562 (826 SE2d 116) (2019) (explaining that "a statute draws its meaning . . . from its text," and "we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would" (citations and punctuation omitted)).

The Johnses argue that OCGA § 51-12-33 (a) does not apply because neither that provision nor the preamble to the 2005 act of which it was a part expressly mentions strict products liability. But it is not necessary for the statute (much less its preamble) to recite "strict products liability" to encompass strict products liability claims like Adrian's within its broad, and by all appearances applicable, language. See *Couch v. Red Roof Inns*, 291 Ga. 359, 361-363 (729 SE2d 378) (2012) (applying OCGA § 51-12-33 to intentional tortfeasors not because the statute mentions them but because "the ordinary meaning of 'fault' . . . includes intentional conduct," explaining that "a thing need not be defined into a class that already includes it").

3. The Johnses further argue that even if the language of OCGA § 51-12-33 (a) would otherwise apply to their claim, we should read into the statute an exception for strict products liability claims, based on a line of Georgia precedent holding that principles of comparative negligence do not apply to such claims. That precedent, however, was supplanted by OCGA § 51-12-33 (a) and (g).

Georgia's strict products liability statute, OCGA § 51-1-11, was originally enacted in 1968. See Ga. L. 1968, p. 1166. OCGA § 51-1-11 (b) (1) says:

> The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

"The paramount purpose of strict liability is the protection of otherwise defenseless victims of manufacturing defects and the spreading throughout society of the cost of compensating them." *Farmex Inc. v. Wainwright*, 269 Ga. 548, 550 (501 SE2d 802) (1998)

(citation and punctuation omitted). To advance these goals, strict products liability "imposes liability irrespective of negligence." *Ford Motor Co. v. Carter*, 239 Ga. 657, 660 (238 SE2d 361) (1977) (plurality opinion). See also *Alexander v. Gen. Motors Corp.*, 267 Ga. 339, 340 (478 SE2d 123) (1996) ("[A] strict liability claim in Georgia . . . eliminates questions of negligence and the usual defenses to negligence."); *Ellis v. Rich's, Inc.*, 233 Ga. 573, 576 (212 SE2d 373) (1975) ("Essentially the doctrine of strict liability eliminates questions of negligence in tort actions.").[4]

A number of cases from this Court and the Court of Appeals have held that a plaintiff's negligence generally is not a defense to a claim of strict products liability. See *Deere & Co. v. Brooks*, 250 Ga. 517, 518 (299 SE2d 704) (1983) ("'[T]he case law generally is in accord with the Restatement of Torts in holding that contributory negligence is not a defense to a claim of strict liability for product-caused harm.'" (citation omitted) (referring to Restatement (Second)

---

[4] The broad statements in these cases should be read in light of the discussion of design defect claims in footnote 6 below.

of Torts § 402A (1965)); *Ford Motor Co.*, 239 Ga. at 661 n.3 (plurality

opinion) ("Contributory negligence on the part of the injured party

is generally not available as a defense in strict liability actions.");

*Ray v. Ford Motor Co.*, 237 Ga. App. 316, 319-320 (514 SE2d 227)

(1999); *Barger v. Garden Way, Inc.*, 231 Ga. App. 723, 727 (499 SE2d

737) (1998); *Continental Research Corp. v. Reeves*, 204 Ga. App. 120,

128 (419 SE2d 48) (1992) (physical precedent only); *Parzini v. Center

Chem. Co.*, 136 Ga. App. 396, 399 (221 SE2d 475) (1975).[5]

---

[5] Both of this Court's cases and all but one of the Court of Appeals cases cited above use the term "contributory negligence" rather than "comparative negligence." "Contributory negligence" is usually used to refer to the principle "whereby any negligence whatsoever on the part of the plaintiff bars his recovery," while "comparative negligence" usually refers to the principles now expressed in OCGA § 51-12-33 (a) and (g), whereby a plaintiff's recovery is reduced but not eliminated unless the plaintiff's fault is the same as or greater than that of the defendant(s). *Bridges Farms v. Blue*, 267 Ga. 505, 505 (480 SE2d 598) (1997). The parties make no argument that we should draw a distinction between the "contributory negligence" discussed in those cases and the scheme of comparative fault imposed by OCGA § 51-12-33 (a) and (g). And in one decision, the Court of Appeals held, in the context of jury instructions, that contributory *and* comparative negligence did not apply to a strict products liability claim. See *Ray*, 237 Ga. App. at 319-320 (upholding the trial court's limiting the jury instructions on "contributory and comparative negligence" to the plaintiff's claim for negligent design and an instruction that "her negligence or contributory negligence is not applicable" to her claim for strict products liability (punctuation omitted)). We will assume, for purposes of this opinion, that the prohibition on contributory negligence discussed in the cases cited above also encompassed a prohibition on comparative negligence. And we

Although the Johnses would like to rely on the precedent established by these cases, all of the cases were decided before the 2005 enactment of OCGA § 51-12-33 (a) and (g).[6] There is no

---

will discuss this nomenclature further in Division 4 (c) below.

We also note that under this case law, the plaintiff's responsibility for injury resulting from use of a product was not eliminated completely in strict products liability cases. For example, the jury could consider the plaintiff's conduct if it went beyond merely failing to discover the product's defect or to guard against the possibility of its existence and instead constituted a knowing assumption of the risk caused by the defect. See, e.g., *Deere*, 250 Ga. at 519 (explaining that the theory "that the plaintiff assumed the risk of the injuries or damages which he sustained, by voluntarily and unreasonably proceeding to encounter a known danger," which is "referred to as 'assumption of risk,' is a valid defense" against a strict products liability claim (citation and punctuation omitted)). See also Restatement (Second) of Torts § 402A comment n. (1965) ("[T]he form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section [discussing strict products liability] as in other cases of strict liability."). The Johnses assert that we should not apply OCGA § 51-12-33 to strict products liability claims because doing so would make this case law about assumption of risk duplicative. However, to the extent § 51-12-33 overlaps with assumption of risk principles, there is certainly no prohibition on statutes covering the same territory as decisional law. See, e.g., *Coen v. CDC Software Corp.*, 304 Ga. 105, 107 (816 SE2d 670) (2018) ("[W]e have held that OCGA § 9-12-40 is a codification of Georgia's basic common law rule of res judicata.").

[6] The prior version of OCGA § 51-12-33 (a), which was enacted in 1987, said:

> Where an action is brought against more than one person for injury to person or property and the plaintiff is himself to some degree responsible for the injury or damages claimed, the trier of fact, in its determination of the total amount of damages to be awarded, if any, may apportion its award of damages among the persons who are liable and whose degree of fault is greater than that of the injured party according to the degree of fault of each person.

question that statutes can displace decisional law. See *Couch*, 291 Ga. at 364 ("[A]s long as legislation does not violate the Constitution, when the Legislature says something clearly — or even just implies it — statutes trump cases."). In fact, we have held that the very statute at issue here supplanted the common law prohibiting apportionment to intentional tortfeasors. See id. at 364-365. Given the clear and broad language of OCGA § 51-12-33, we conclude, as the Court of Appeals did, that the statute supplanted the no-comparative-negligence holdings of the pre-2005 cases on which the Johnses rely. See *Suzuki Motor*, 351 Ga. App. at 198.

---

Damages, if apportioned by the trier of fact as provided in this Code section, shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.

See Ga. L. 1987, p. 915, § 8. The Johnses argue that this provision is materially identical to the current § 51-12-33 (a), so any case decided after 1987 following the rule that comparative negligence does not apply to strict products liability claims should be treated as rejecting the application of the current § 51-12-33 (a) to strict products liability claims. There are two major holes in that argument. First, the 1987 and 2005 provisions are *not* the same. Significantly, the earlier version of the provision did not say "the judge shall reduce the amount of damages otherwise awarded to the plaintiff in proportion to his or her percentage of fault." Second, the Johnses have not cited a single case actually addressing the earlier version of § 51-12-33 (a) in the context of strict products liability.

4. The Johnses offer a few more arguments as to why, in their view, the precedent rejecting comparative negligence for strict products liability claims must survive OCGA § 51-12-33. None of those arguments is persuasive.

(a) The Johnses suggest that we cannot now hold that OCGA § 55-12-33 (a) and (g) displace the decisional law rule about comparative negligence and strict products liability claims because when we said in *Zaldivar* that OCGA § 55-12-33 (a) and (g) "codify the doctrine of comparative negligence," 297 Ga. at 594, we were holding that the statute preserved any and all limitations on comparative negligence. That is an overbroad reading of *Zaldivar*. We obviously did not in that case consider and endorse every holding about comparative negligence that had ever been issued by a Georgia court. Rather, we were speaking only of the general principle of comparative negligence, which is textually reflected in OCGA § 51-12-33 (a) and (g).

(b) The Johnses contend that the pre-2005 case law was affirmed by the Court of Appeals in *Patterson v. Long*, 321 Ga. App.

157 (741 SE2d 242) (2013), and we should follow *Patterson*. In that case, which involved review of an arbitrator's award, the Court of Appeals said:

> Both parties agree that if liability is imposed upon a defendant manufacturer under the doctrine of strict liability, principles of contributory and comparative negligence are inapplicable, and fault should not be apportioned between the plaintiff victim and the defendant manufacturer in awarding damages.

Id. at 161 (citing *Deere*, 250 Ga. at 518, and *Ford Motor Co.*, 239 Ga. at 662). This statement was not a reasoned consideration of OCGA § 51-12-33's effect on the pre-2005 case law. Instead, *Patterson* simply restated the parties' agreement on the issue without acknowledging the existence of, much less analyzing, § 51-12-33. Moreover, *Patterson*'s statement was dicta, as the court decided the case based on the standard for review of an arbitrator's decision. See id. at 165-166. Thus, *Patterson* is not persuasive on the question we decide today, and to the extent that case indicates that the decisions prohibiting the application of comparative negligence to strict products liability claims survived the 2005 enactment of § 51-12-33,

we disapprove it.

The Johnses also point to *Hernandez v. Crown Equip. Corp.*, Civil Action No. 7:13-CV-91 (HL), 2015 WL 4067695 (M.D. Ga. July 2, 2015), in which a federal district judge said, relying primarily on *Patterson*:

> The state of the law is clear in Georgia: where a defendant manufacturer is found liable under the doctrine of strict liability, the principle of comparative negligence does not apply, and it is not appropriate to apportion fault between the plaintiff victim and the defendant manufacturer.

*Hernandez*, 2015 WL 4067695, at *2. The *Hernandez* court acknowledged OCGA § 51-12-33 (a), but concluded that *Patterson* and the pre-2005 cases on which it relied prohibited the application of the statute to a strict products liability claim. The court did not appear to contemplate the possibility that § 51-12-33 (a) had supplanted the decisional law that *Patterson* injudiciously cited in support of its dicta. The district court's ruling was affirmed by the Eleventh Circuit in an unpublished decision with no further analysis and no mention at all of § 51-12-33. See *Hernandez v.*

*Crown Equip. Corp.*, 649 Fed. Appx. 726, 730 (11th Cir. 2016) ("Under Georgia law, contributory negligence is not a defense to a products liability claim." (citing *Deere*, 250 Ga. at 518)). The decisions of federal courts do not control this Court's interpretation of Georgia law. See *Barrow v. Raffensperger*, 308 Ga. 660, 689 n.27 (842 SE2d 884) (2020). And, given the shortcomings in their analyses, the *Hernandez* decisions are not persuasive.

By contrast, when another federal district judge more carefully considered OCGA § 51-12-33 and its effect on strict products liability claims, the court recognized that the statement about comparative negligence in *Patterson* was dicta "that relies upon common law predating the enactment of [OCGA § 51-12-33]" and that this Court's analysis in *Couch* "does not support this Court of Appeals dicta." *Bullock v. Volkswagen Group of America*, Case No. 4:13-CV-37 (CDL), 2015 WL 5319791, at *1 (M.D. Ga. Sept. 11, 2015). Understanding that *Couch* read § 51-12-33 (a)'s plain language as "not restrict[ing] its application to a particular type of action," the court concluded:

[OCGA § 51-12-33] provides no exception for actions based on a theory of strict liability. And a plain reading of the statute does not reveal any intention to exclude strict liability actions from its application. The statute simply and clearly provides that it applies to actions "brought against one or more persons for injury to person or property [where] the plaintiff is to some degree responsible for the injury or damages claimed." Id. To the extent that the application of the comparative fault statute to a strict liability product defect claim may be inconsistent with the common law that predated the enactment of the statute, the Georgia General Assembly certainly had the authority to displace that common law.

*Bullock*, 2015 WL 5319791, at *2. This reasoning is more fulsome and more persuasive, and it reaches the same conclusion we do today.

(c) The Johnses also assert that allowing comparative negligence to be considered will effectively eliminate the claim of strict products liability, and the General Assembly could not have intended to make such a "radical" change sub silentio. Permitting comparative negligence to be applied to strict products liability claims does not, however, mean the end of strict products liability. OCGA § 51-12-33 (a) and (g) do not conflict with OCGA § 51-1-11. Plaintiffs raising strict products liability claims will still generally

be relieved of the burden of showing that the injury-causing product defect was the result of the manufacturer's negligence.

The Johnses assert that the benefit the plaintiff derives from not having to prove the manufacturer's negligence is undermined by injecting any consideration of negligence into a strict products liability claim. See *Alexander*, 267 Ga. at 340 (stating that Georgia's strict products liability claim "eliminates questions of negligence and the usual defenses to negligence").[7] But considering a *plaintiff's*

---

[7] Some of us are concerned that although *Alexander* spoke in broad terms about the elimination of questions of negligence in strict products liability claims, the issue may be more nuanced than that opinion (and similar broad statements in other cases) acknowledged. Notably, strict products liability claims based on an alleged design defect (rather than a manufacturing or marketing/packaging defect) generally require application of the "risk-utility analysis," which "incorporates the concept of 'reasonableness,' i.e., whether the manufacturer acted reasonably in choosing a particular product design." *Banks v. ICI Americas, Inc.*, 264 Ga. 732, 734 (450 SE2d 671) (1994). "'Conceptually and analytically, this approach bespeaks negligence.'" Id. (citation and punctuation omitted). In adopting the risk-utility test, this Court recognized that

> the determination of whether a product was defective (involving the reasonableness of a manufacturer's design decisions), which is a basic inquiry for strict liability purposes, generally will overlap the determination of whether the manufacturer's conduct was reasonable, which is a basic inquiry for negligence purposes.

Id. at 735 n.3. But we also preserved the notion of some difference between a negligence claim and a design defect strict liability claim, saying that "we cannot agree that the use of negligence principles to determine whether the

responsibility for an injury does not require proof of the *manufacturer's* negligence. Indeed, although the doctrine is commonly called "comparative negligence," it does not present the same kind of negligence question that would be presented about a manufacturer in a traditional negligence case.

> It has been suggested that the term "contributory negligence[ ]" . . . may indeed itself be a misnomer since it lacks the first element of the classical negligence formula, namely, a duty of care owing to another. A highly respected torts authority, Dean William Prosser, has noted this fact by observing, "It is perhaps unfortunate that contributory negligence is called negligence at all. 'Contributory fault' would be a more descriptive term.

*Daly v. Gen. Motors Corp.*, 575 P2d 1162, 1167-1168 (Cal. 1978).

This understanding is especially helpful when we consider

---

design of a product was 'defective' necessarily obliterates under every conceivable factual scenario the distinction Georgia law has long recognized between negligence and strict liability theories of liability." Id. See also *Bailey v. Cottrell, Inc.*, 313 Ga. App. 371, 377 (721 SE2d 571) (2011) (Blackwell, J., concurring) (explaining that the standards for evaluating Indiana's negligence claim for a design defect and Georgia's strict products liability claim for a design defect were not "radically dissimilar" (punctuation omitted)). We need not delve any further into the question of whether and how a manufacturer's negligence may be considered in certain types of strict products liability claims, however, because even taking *Alexander*'s broad statement as totally correct and universally applicable, the Johnses' argument fails for the reasons discussed below.

OCGA § 51-12-33, which is not framed in terms of "negligence," but instead focuses on the plaintiff's "responsib[ility]" and "fault" for the injury claimed. OCGA § 51-12-33 (a) and (g). As we explained in *Couch*, "fault is not meant to be synonymous with negligence." 291 Ga. at 362. See also *Zaldivar*, 297 Ga. at 594 ("'[F]ault' — at least as the term is used in subsection (a) with respect to a plaintiff — refers to a breach of the legal duty that a plaintiff owes to exercise ordinary care to avoid injury to himself that is a proximate cause of the injury for which he now seeks to recover damages from a defendant."). Thus, comparative negligence — which is really comparative fault — is not incompatible with a strict products liability claim.

Some courts have noted that "comparing [a] plaintiff's fault with a product defect is no easy task." Restatement (Third) of Torts: Products Liability § 17, reporters' note on comment a. (1998) (collecting cases). But difficult is not the same as impossible, and we have previously expressed our faith in the ability of juries to compare disparate types of fault. See *Couch*, 291 Ga. at 365-366 (requiring jurors to apportion fault between negligent and

intentional tortfeasors).[8] In *Loudermilk*, we held that the common-

law principle of joint and several liability for "traditional concerted

action" survived OCGA § 51-12-33's imposition of apportionment in

actions for injury to person or property because "fault in such

[concerted-action] scenarios is not divisible." *Loudermilk*, 305 Ga. at

---

[8] As the Alaska Supreme Court has explained:

> "It is true that the jury might have some difficulty in making the calculation required under comparative negligence when [the] defendant's responsibility is based on strict liability. Nevertheless, this obstacle is more conceptual than practical. The jury should always be capable, when the plaintiff has been objectively at fault, of taking into account how much bearing that fault had on the amount of damage suffered and of adjusting and reducing the award accordingly. . . ." Comparative negligence systems have long been employed in other jurisdictions, and experience has not borne out the argument that the system is difficult for courts and juries to administer.

*Butaud v. Suburban Marine & Sporting Goods, Inc.*, 555 P2d 42, 45 (Alaska 1976) (citation omitted), superseded in part by statute as noted in *Smith v. Ingersoll-Rand Co.*, 14 P3d 990, 993-994 (Alaska 2000). See also *Daly*, 575 P2d at 1170 ("We are unpersuaded by the argument [that jurors cannot assess or compare plaintiff's negligence with defendant's strict liability] and are convinced that jurors are able to undertake a fair apportionment of liability.").

The Johnses argue that we should not look to decisions from other states for help in deciding this case because Georgia's strict products liability claim applies only to manufacturers, whereas in other states it may apply to sellers and distributors as well. This difference, however, does not convince us that Georgia's strict products liability claim, unlike strict products liability claims in other states, cannot co-exist with principles of comparative negligence. We cite opinions from other states primarily to illustrate how other courts have evaluated the policy arguments that have been raised in this case.

The Johnses seek to rely on that holding to preserve the cases rejecting comparative negligence in strict products liability. That reliance is unfounded, because the application of comparative negligence is possible in strict products liability claims, where manufacturers and consumers of products are not engaged in traditional concerted action.

(d) Finally, the Johnses argue that holding manufacturers absolutely liable is a fundamental tenet of strict products liability, so allowing their responsibility to be reduced or eliminated based on the plaintiff's fault undermines the policy behind strict products liability. There is a policy argument that the protection of consumers is so important that it should extend to ignoring their contribution to injuries caused by defective products. On the other hand, some courts and scholars "have argued that it is unwise to relieve users and consumers of all responsibility for safe product use and consumption." Restatement (Third) of Torts: Products Liability § 17, reporters' note on comment a. (1998). See also *Daly*, 575 P2d at 1169 ("[W]e do not permit plaintiff's own conduct relative to the product

to escape unexamined, and as to that share of plaintiff's damages which flows from his own fault we discern no reason of policy why it should . . . be borne by others."); *Smith v. Goodyear Tire & Rubber Co.*, 600 FSupp. 1561, 1568 (D. Vt. 1985) ("Although we would be reluctant to completely excuse defendants simply because some of a plaintiff's injuries might have resulted from his own actions, it also does not seem fair to allow a negligent plaintiff, who may have contributed to as much as fifty percent of his injuries, to pay for none of them and to recover as much as a plaintiff who had taken all precautions reasonable under the circumstances."). In balancing these competing policy considerations, the General Assembly chose to enact OCGA § 51-12-33 (a) and (g).[9]

---

[9] A comment in the Third Restatement of Torts explains that concern about protecting consumers was what led the authors of the Second Restatement to decide that contributory negligence should not be a defense in strict products liability claims:

> Section 402A of the Restatement, Second, of Torts, recognizing strict liability for harm caused by defective products, was adopted in 1964 when the overwhelming majority rule treated contributory negligence as a total bar to recovery. Understandably, the [American Law] Institute was reluctant to bar a plaintiff's products liability claim in tort based on conduct that was not egregious. Thus, § 402A, Comment n, altered the general tort

5. For the reasons explained above, we are not persuaded that we should ignore the plain language of OCGA § 51-12-33 (a) and write into the statute an exception for strict products liability claims. The Court of Appeals did not err by concluding that the statute applies in this case, and the trial court did not err by reducing the Johnses' damages awards based on Adrian's fault and not awarding pre-judgment interest.

*Judgment affirmed. All the Justices concur, except Peterson, J., who concurs except as to footnotes 7, 8, and 9, and Blackwell and Warren, JJ., not participating.*

defenses by narrowing the applicability of contributory negligence and emphasizing assumption of risk as the primary defense.

Restatement (Third) of Torts: Products Liability § 17, comment a. (1998). The Third Restatement goes on to explain, however, that a plaintiff's comparative responsibility is no longer a total bar in the vast majority of states (including Georgia) and, correspondingly, "[a] strong majority of jurisdictions apply the comparative responsibility doctrine to products liability actions." Id.

Decided October 19, 2020.

Certiorari to the Court of Appeals of Georgia — 351 Ga. App. 186.

*Parks, Chesin & Walbert, David F. Walbert, Jennifer K. Coalson; Cochran & Edwards, R. Randy Edwards, Paul A. Piland; Sherrod & Bernard, John W. Sherrod*, for appellants.

*King & Spalding, Chilton D. Varner, Susan M. Clare*, for appellees.

*John D. Hadden; Balch & Bingham, James D. Meadows, James L. Hollis, Malissa A. Kaufold-Wiggins, Patrick N. Silloway; Chambless, Higdon, Richardson, Katz & Griggs, David N. Nelson; Drew, Eckl & Farnham, Elissa B. Haynes; Ellis Painter Ratterree & Adams, Philip M. Thompson*, amici curiae.